UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| International Brotherhood of<br>Electrical Workers Local 31,<br><br>Plaintiff,<br><br>v.<br><br>ALLETE, Inc., d/b/a Minnesota<br>Power,<br><br>Defendant. | Case No. 16-cv-523 (PAM/LIB)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's Petition to Compel Arbitration and Defendant's Motion to Stay. For the reasons that follow, the Defendant's Motion is granted and Plaintiff's Motion is denied without prejudice.

**BACKGROUND**

Duluth-based International Brotherhood of Electrical Workers Local 31 (the "Union") represents workers at Minnesota Power, an electric utility that generates power for northern Minnesota. Minnesota Power is a division of ALLETE, Inc. (Galo Decl. (Docket No. 16) ¶ 2.) ALLETE, Inc. is the parent company to several subsidiaries, including, as relevant here, Allete Enterprises, Inc. (Id.) Allete Enterprises has its own subsidiaries, among them Allete Renewable Resources, Inc. ("ARRI"), which employs four wind technicians at the Minnesota Power-owned Taconite Ridge Wind Energy Center in Mountain Iron, Minnesota. (Id. ¶ 3.)

In February 2014, the Union and Minnesota Power executed a Collective Bargaining Agreement for Minnesota Power employees. (Id. Ex. 1.) According to Minnesota Power, other ALLETE subsidiaries such as Allete Enterprises and Superior Water, Light & Power have separate collective bargaining agreements with the Union for their employees. (Id. ¶ 5.)

In May 2015, the Union filed a petition for a representation election ("RC Petition") with the National Labor Relations Board ("NLRB"), proposing the Taconite Ridge wind technicians as a bargaining unit. (Id. ¶ 6, Ex. 2.) The RC petition listed Minnesota Power as the proposed employer, and proposed a bargaining unit of "Lead Windtech, Windtech to be added to the existing list of all job classifications included in the Minnesota Power Collective Bargaining Agreement." (Id.) Minnesota Power challenged the proposed unit, arguing that the wind technicians were employees of ARRI, not Minnesota Power. (Id. ¶ 7, Ex. 3.) The Union subsequently withdrew its RC Petition. (Id. ¶ 8, Ex. 4.)

The Union then filed a second RC Petition, this time naming as the proposed employer "Allete, Inc. (d/b/a/ Minnesota Power) and Allete Renewable Resources, Inc., as a single employer." (Id. ¶ 9, Ex. 5.) This RC Petition described the proposed bargaining unit as "[a]ll employees employed at the Employer's Mt. Iron Facility." (Id.) The companies did not dispute the single employer designation or otherwise challenge the second petition.

The NLRB approved the second RC Petition, defining a bargaining unit composed of "wind technicians and lead wind technicians employed by the Employer at its [Mt.

Iron facility]; excluding all other employees, managerial employees, and guards and supervisors as defined by the Act." (Id. ¶ 10, Ex. 6.) After an election, the Union was certified as the wind technicians' bargaining unit's exclusive bargaining representative in July 2015. (Id. ¶ 11, Ex. 7.)

The dispute here is whether the wind technicians are part of the Minnesota Power bargaining unit and thus subject to the already-existing CBA with Minnesota Power, or whether they are a separate bargaining unit for which a new CBA is necessary. The Union believes that the wind technicians are covered by paragraph 24 of the Minnesota Power CBA, which states:

> Should there be employees of the Company who are not covered in the classifications in this Article who desire the Union to represent them, the representatives of the parties hereto shall meet on ten (10) days written notice from either party to the other or at a date mutually agreed on for the purpose of negotiating, concerning wages, hours and other definite conditions of employment of such employees, and on their failure to fully agree, the points of difference shall be settled by arbitration in the manner as provided herein.

(Id. ¶ 14, Ex 1 ¶ 24.) The Union asked the companies to arbitrate in accordance with this provision, but the companies argued that no contract or grievance procedure governed the wind technicians. Instead, the companies said that they were willing to negotiate a new contract with the Union for those employees. (Id. ¶ 15, Ex. 10.) The Union asked for a written confirmation of the companies' refusal to arbitrate. In response, the companies proposed dates for negotiations of a wind technician contract. (Id. ¶ 16, Exs. 11, 12.)

The CBA defines the term "Company" as Minnesota Power and "firms owned and controlled by it, wholly or jointly . . . and located in the State of Minnesota." (Galo Decl.

3

Ex. 1 ¶ 2.) Thus, according to the Union, the wind technicians are "employees of the Company who are not covered in the [CBA's] classifications" under paragraph 24 of the CBA, and the companies are therefore bound to arbitrate the Union's grievance regarding those employees under the CBA's broad arbitration provision. (Id. Ex. 1 ¶ 10 (providing that "all differences that may arise which cannot be agreed upon by the representatives of the Company and the Union . . . shall be submitted at the request of either party to an Arbitration Board"). The companies contend, on the other hand, that the NLRB's definition of the wind technician bargaining unit establishes that these employees are not covered by the Minnesota Power CBA, making arbitration under that CBA inappropriate.

The Union filed this Petition to Compel Arbitration on March 1, 2016. (Docket No. 1.) Three days later, the companies filed an unfair labor practice charge with the NLRB regarding the Union's "fail[ure] and refus[al] to bargain for a new collective bargaining agreement in violation of Sections 8(b)(1) and 8(b)(3) of the National Labor Relations Act with respect to the newly certified wind technician bargaining unit." (Galo Decl. ¶ 18, Ex. 13.) Defendant asks the Court to either dismiss the Petition or to stay the proceedings until the NLRB has determined the unfair labor charge.

**DISCUSSION**

The Union insists that the Court must start its analysis by recognizing the federal policy that favors arbitration, especially in the labor arena. But first, the Court must determine whether it has subject matter jurisdiction over the dispute. Only then can the Court examine the arbitration issue.

The Court's jurisdiction over this matter is premised on § 301 of the NLRA, which provides in relevant part that lawsuits "for a violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States . . . ." 29 U.S.C. § 185(a).  The Court's jurisdiction over labor disputes is not without limits, and Minnesota Power argues that the instant dispute is a "representational matter" over which the NLRB, rather than the Court, has exclusive jurisdiction.  Id. § 159; see also Constr., Bldg. Material, Ice & Coal, Laundry, Dry Cleaning, & Indus. Laundry & Dry Cleaning Drivers, Helpers, Warehousemen, Yardmen, Salesmen, & Allied Workers, Local 682 v. Bussen Quarries, Inc., 849 F.2d 1123, 1124-25 (8th Cir. 1988).

The Union contends that there is no representational issue here, because the employees at issue have already voted to be represented by the Union.  But merely because a group of employees has voted to be represented by a union does not mean that there is no "representational issue" in a case.  And although much of the parties' arguments focus on who is the "employer" for purposes of the CBA, the relevant question is in fact whether the bargaining unit the NLRB defined in ruling on the second RC Petition precludes the Union from invoking the preexisting CBA to force arbitration of this dispute.  This is something that the NLRB must determine in the first instance.

A "representational issue" is one that "calls for a resolution of the right to represent [and is] a matter within the exclusive domain of the NLRB." West Point-Pepperell, Inc. v. Textile Workers Union, 559 F.2d 304, 307 (5th Cir. 1977).  Here, although the wind technicians have agreed to be represented by the Union, the question is

whether the wind technicians will be allowed to negotiate their own CBA or whether they will be bound by a CBA they did not negotiate.  This is a quintessential representation issue.  The bargaining unit's definition is a matter for the NLRB to determine in the first instance.  Only when this issue is resolved can the parties either return to this Court to enforce the Petition or negotiate a separate CBA for the wind technicians.

**CONCLUSION**

The Court lacks jurisdiction over the parties' dispute in the absence of a ruling by the NLRB on the bargaining-unit issue.  Accordingly, **IT IS HEREBY ORDERED that**:

1. The Petition to Compel Arbitration (Docket No. 1) is **DENIED** without prejudice;

2. The Motion to Stay (Docket No. 12) is **GRANTED**; and

3. This matter is **STAYED** pending resolution of the pending unfair labor practice charge.

Dated:  May 24, 2016

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge